IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>DUSTIN J. LOWE,<br>Defendant. | Case No. 13–CR–40059–JPG–1 |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dustin J. Lowe's Motion for Compassionate Release. (ECF No. 141). For the reasons below, the Court **DENIES** Lowe's Motion.

### I.   PROCEDURAL & FACTUAL HISTORY

#### A.  The Conviction

In May 2013, a federal grand jury in this District indicted Lowe for conspiring to manufacture methamphetamine. (Indictment 1, ECF No. 1). He pleaded guilty that year, (Plea Agreement 1, 10, ECF No. 64); and the Court sentenced him to an 84-month term of imprisonment, (First Judgment 2, ECF No. 75).

In October 2017, less than six months after being released, Lowe committed several violations of the terms of supervised release, including fleeing to allude a police officer, possession of methamphetamine, failing a urinalysis test, failing to maintain employment, and associating with another felon. (First Petition for Revocation of Supervised Release 1–2, ECF No. 104). The Court then sentenced him to 18 more months of incarceration. (First Judgment for Revocation of Supervised Release 2, ECF No. 116).

Finally, in September 2019, seven months after being released, Lowe again committed several violations of the terms of supervised release, including possession of methamphetamine

and failing to participate in seven Court-ordered drug-treatment meetings. (Second Petition for Revocation of Supervised Release 1–2, ECF No. 123). The Court sentenced him to another 24 months. (Second Judgment for Revocation of Supervised Release 2, ECF No. 135). He is currently incarcerated at Tallahatchie County Correctional Facility in Mississippi. (Def.'s Mot. for Compassionate Release at 2).

### B.  The Presentence Investigation Report

Before each sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Lowe's background. (PSR 1, ECF No. 70).

According to the PSR, state law-enforcement officers first learned that Lowe was manufacturing methamphetamine during a traffic stop in 2012. (*Id.* at 5). After the officers "discovered a bag containing approximately 0.5 gram of finished methamphetamine," Lowe admitted that it was his and that he manufactured it himself. (*Id.*). Over the next year, officers with the Illinois State Police and the U.S. Drug Enforcement Administration revealed the extent of Lowe's manufacturing operation: The total relevant conduct was "a minimum of 104 grams of finished methamphetamine." (*Id.* at 7). Lowe "also stipulated he possessed one or more firearms during the course of the conspiracy to which he pled guilty, one of which he obtained by trading a quantity of methamphetamine." (*Id.*).

Before committing those offenses, Lowe pleaded guilty to at least five other crimes from 2009 to 2013, including burglary of a house of worship and "possession of certain weapons." (*Id.* at 8–10). He was also arrested on suspicion of committing other crimes, like a 2009 arrest for "Aggravated Battery/Pregnant Person" and a 2011 arrest for domestic battery when he hit a woman "in the face with a picture frame." (*Id.* at 13).

### C. Lowe's Motion for Compassionate Release

In 2020, Lowe moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that a serious medical condition—an "ongoing lung infection that has resulted in mold in [his] lungs"—makes him especially vulnerable to the COVID-19 virus. (*Id.*). The COVID-19 virus, of course, is now a global pandemic. In brief, Lowe argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (*Id.*).

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Lowe failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

    (1) the nature and circumstances of the offense and the history and characteristic of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for—

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

        (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

    (5) any pertinent policy statement—

        (A) issued by the Sentencing Commission . . .; and

        (B) that . . . is in effect on the date the defendant is sentenced[;]

    (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Dec. 1, 2020).[1] Although not bound by any BOP determination, the Court gives it some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Lowe's half-page Motion for Compassionate Release says nothing about why this time would be different. He is, after all, currently serving his second revocation. At just 32 years old, Lowe has shown that he could not care less about his community, choosing time and again to flout the law and contribute to the devastation caused by illicit drugs. True enough, people can change. But Lowe does not even attempt to show that he has. Rather, even given the COVID-19 virus and

---

[1]  *Available at* https://www.bop.gov/coronavirus/.

— 6 —

Lowe's increased vulnerability to it, his continued incarceration remains necessary to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to protect the community, and to adequately deter Lowe and other from committing further crimes.

### III. CONCLUSION

The Court **DENIES** Defendant Dustin J. Lowe's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Tuesday, December 1, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**